MILLS, Receiver of Ft. Smith & W. R. Co.,
v. HOLLINSHED.

No. 10161—Opinion Filed July 19, 1921.

(Syllabus.)

1. Trial—Instructions—Special Instructions—Time for Request.

Under section 5002 of Revised Laws of 1910, a party desiring to have special instructions covering his particular theory of the cause presented to the jury, it is his duty to present them in writing at the conclusion of the evidence or else he should get permission of the court to present them at a later time. We hold this to be a reasonable rule, fair to the court and to the parties to the litigation, since the trial court is entitled to have them presented to him in time, that he may have them to assist him in the preparation of his general charge to the jury, and that he may have opportunity to properly perform his duties as directed by the provisions of subdivision 6 of section 5002, supra.

2. Appeal and Error—Discretion of Lower Court—Giving Requested Instructions—Requisites.

Where a special instruction is requested, it is the duty of counsel to prepare and submit to the court such desired instruction in writing, properly numbered and signed, and upon timely delivery to the court, request that it be given. Upon a failure so to do, where the court has given general instructions applicable to and reasonably covering the issues and the evidence, this court will not consider as an error the court's failure to instruct of its own motion upon any given proposition, since if held not to have been presented in time and in compliance with the statute (section 5002, Rev. Laws 1910) and as interpreted in the first syllabus, the granting of same thereafter is in the discretion of the trial court.

3. Trial—Refusal of Instructions—Timely Request—Prejudicial Error.

In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the defense; and failure so to do, at the timely request of defendant, constitutes prejudicial error.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action by Silas A. Hollinshed against A. L. Mills, receiver of the Ft. Smith & Western Railway Company, for negligent destruction of wagon and team. Judgment for plaintiff and defendant brings error. Affirmed.

Warner, Hardin & Warner, for plaintiff in error.

Hazen Green, John W. Robertson, and Hugh A. White, for defendant in error.

ELTING, J. This action was brought in the district court of McIntosh county, state of Oklahoma, on the 22nd day of January, 1917, by the plaintiff below, defendant in error herein, Silas A. Hollinshed, against A. L. Mills, receiver of the Ft. Smith & Western Railway Company, defendant below, plaintiff in error herein, to recover the value of two mares, one wagon, and one set of harness, charged to have been negligently destroyed, killed, and damaged by defendant below, plaintiff in error herein.

After filing his original petition, the plaintiff below filed an amended petition, to which amended petition the defendant filed a motion to make more definite and certain, and the same was overruled, and the defendant below filed an answer including a general denial, and as new matter alleged contributory negligence on the part of the plaintiff. To which answer the defendant filed a reply, which denied the allegations contained in the answer.

Said cause was tried before a jury. The substance of the evidence of the plaintiff was about as follows: That the plaintiff was owner of a span of mares, and that he sent his son from the farm, northeast of Hanna, Oklahoma, to the town of Hanna with a load of cotton, driving the span of mares. That the Fort Smith & Western Railway Company operated a line of railroad through the small town of Hanna; the main track running through the town in a northwesterly direction. That the road over which the boy drove comes into the town parallel with the track of the railroad, and turns in and across the railroad track at a point a few feet west of where a spur line connects with the main track; the spur line running down in a southwesterly direction and to a gin. The purpose of the boy was to drive the load of cotton to the gin. The main railroad track appears to be straight, without any curves, through the town in the general direction it runs, and is down grade eastward. Just prior to or about the time the boy reached the crossing with the team and load of cotton, a freight train of

the defendant came in and stopped east of the crossing where the accident occurred. The locomotive and the water tank car, which was connected immediately behind the locomotive, were detached from the train and went onto the spur and coupled a couple of freight cars in front of the locomotive; backed up over the spur and cleared the crossing and the switch to the main line, and the two cars with the engine and the water tank car to the rear of the engine were pushed westward on the main line and cleared the crossing until the east end of the water tank car was a few feet west of the crossing where the boy stood with the team and wagon on the north side of the track and facing the crossing. As soon as the track was cleared by the water tank car, the boy started to drive the team across the crossing. In a very short space of time after the locomotive had pushed the two cars over the crossing and a sufficient distance that the east end of the water tank car had gone beyond the crossing 15 or 20 feet, the two freight cars were detached from the locomotive and the brakes were set on the two cars by a brakeman; the engine was then suddenly reversed and without warning was run back over the crossing. The east end of the water car ran into the span of horses and the wagon. One of the mares was killed, and the other's leg was broken and had to be killed, and the wagon was destroyed, harness damaged, and the boy saved himself by leaping out of the tail end of the wagon. The evidence of the plaintiff shows that the boy had stopped with the head of the horses toward the railroad track, just a few feet therefrom. The evidence of the plaintiff further showed that the east end of the water tank car had cleared the crossing to the west only 15 or 20 feet when the engine was reversed and came back. The boy, relying upon the fact that the crossing had been cleared, drove onto the crossing, believing that it was the intention of the engineer to carry the cars further up the track and give him time to cross in safety.

The evidence of the railroad company, that of the engineer and brakeman, gives these additional facts: That there was a brakeman on the two cars pushed westward on the main track, a brakeman on the cow-catcher for the purpose of uncoupling the two cars, and one brakeman on the water tank car, and that it was the purpose of the railroad employes to hold the two cars on the main track with the brakes, reverse the engine, run the engine and tank car back over the crossing, past the switch of the spur, run the engine and water tank on to the spur, then have the brakeman release the brakes of the

two cars, then, permitting the force of gravitation to carry them back and connect them with the train on the main line, then run the engine back and connect with the train on the main line. The evidence of the railroad company further shows that the boy and team were standing 25 or 30 feet from the track north of the crossing as the train passed over the crossing westward on the main line and before the engine was reversed, and that before the engine was reversed the east end of the tank car was 40 or 50 feet west of the crossing on the main line, and that the boy did not start his team onto the crossing until after the train had reversed and was moving toward the crossing, and that one of the trainmen warned the boy as the cars and engine passed westward over the crossing.

This is denied by the evidence of the plaintiff and the boy, who states that he started the team onto the crossing immediately after the east end of the tank car had passed the crossing.

The proofs of the railroad company show that the bell was rung and the whistle was blown, and the evidence of the plaintiff below disputes this contention.

Ten of the jurors returned a signed verdict in favor of the plaintiff, two of the jurors refusing to concur.

The trial court instructed the jury in instructions numbering from 1 to 10, inclusive. The first five of said instructions were merely a statement of the issues to the jury. The defendant railroad company excepted to the first and forth of said instructions. In the sixth instruction the court defined the duties of the respective parties and the rule as to what care and diligence was required of each and where applicable to the circumstances of the case. To this instruction the defendant excepted. In the seventh instruction the court instructed the jury that if they believed by preponderance of the evidence that the defendant was guilty of negligence and failed to exercise ordinary care in the operation of its train, and as the proximate result thereof the horses were killed and damage done, they must find for the plaintiff, unless they found that the driver of the team himself failed to exercise ordinary care and was guilty of contributory negligence, and said contributory negligence on the part of the driver and the failure to exercise or ordinary care on his part resulted in the killing of the horses and the damage to the property, in which event the verdict must be for the defendant. No exception to this instruction was taken, and no exceptions

taken to the 8th, 9th, and 10th instructions by the defendant.

Instruction No. 8 defines contributory negligence. In instruction 9 the court instructed the jury that the burden of proof was on the plaintiff to establish each and every particular fact necessary to make out his cause of action by preponderance of the evidence. Then it defines what is meant by preponderance of the evidence.

Before the reading of the court's instructions to the jury, the defendant railroad company, by its attorney, presented to the court 13 requested instructions. The court refused to consider said instructions for the following reasons:

"Refused consideration by the court for the reason that the same was not timely presented. This covers all requested instructions from 1 to 13."

The above quotation is signed by the court, and appears in the record just after the requested instructions tendered the court by the defendant railway company.

The defendant railway company filed a six page motion for a new trial, setting up 35 allegations of error, and it is what we would call a drag-net motion, and the lawyer who presented it knew that there were not 35 errors committed in that trial. We think that we are safe in saying that he knew there were not ten errors committed in the trial. The probability is that the attorney for the defendant had faith in only two or three of the errors assigned. Among the errors mentioned in the motion for a new trial, were the error in overruling the motion for an instructed verdict, and the errors in refusing the 13 requested instructions. Plaintiff in error in his petition in error assigns 12 assignments of error, but in his brief assigns for argument only six assignments of error, as follows, to wit:

"1. The court erred in failing to give defendant's requested instruction No. 13. (Specification of error No. 10.)

"2. The court erred in refusing to give defendant's requested instruction No. 5. (Specification of error numbered 10).

"3. The court erred in refusing to give defendant's requested instruction No. 11, (Specification of error numbered 10.)

"4. The court erred in refusing to give defendant's requested instruction No. 13. (Specification of error numbered 10.)

"5. The court erred in refusing to consider and give instructions requested by defendant. (Specifications of error numbered 9 and 10.)

"6. The court erred in refusing to grant the defendant a new trial, and in rendering judgment against the defendant. (Specifications of error numbered 10 and 12.)"

—and argued each under said heads.

We find that the instructions given by the court state the law that is applicable to the case, and are sufficiently full to cover the case, and we find no error, unless the court committed error in refusing to consider the specially requested instructions asked by the defendant. The second paragraph of the syllabus of Mountcastle v. Miller, 66 Oklahoma, 166 Pac. 1057, reads as follows:

"In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the defense; and failure so to do, at the request of defendant, constitutes prejudicial error."

To the same effect is the third paragraph of the syllabus in the case of Bristow v. Central State Bank, 68 Oklahoma, 173 Pac. 221. The fifth paragraph of the syllabus in the case of Chicago, Rock Island & Pacific Ry. Co. v. Radford, 36 Okla. 657, 129 Pac. 835, reads as follows:

"Where a special instruction is requested, it is the duty of the counsel to prepare and submit to the court such desired instruction in writing, properly numbered and signed, and, upon timely delivery to the court, request that it be given. Upon failure so to do, where the court has given general instructions applicable to the issues and the evidence, this court will not consider as error the court's failure to instruct of its own motion upon any given proposition."

We find, upon examination of the requested instructions of the defendant railroad company, that there are two or three of the requested instructions that should have been given by the trial court if they had been properly and timely presented, and especially requested instruction No. 13, defining proximate cause, since the trial court does not seem to have given a definition of that phrase. We have held that the instructions of the court were ample and sufficient, and were all that were required of the court to give on his own motion, but we hold that if requested instruction No. 13, which was refused by the court, had been properly and timely presented, it would have been error for the court to refuse the same, for the reason that under the issue as presented by the facts, the railroad company would be entitled to a definition of proximate cause; and we will have to reverse the cause for such error, unless we find that the same was not properly and timely presented.

The attorney for the defendant railroad company argues this proposition under the

fifth assignment that he presents in his brief. We hold that under the state of this record the defendant has failed to show that it presented its requested instructions in time, and that the court committed no error in refusing to consider and give any of said instructions.

A portion of section 5002, Rev. Laws of Oklahoma, 1910, and the part that is applicable herein, reads as follows:

"Order of Trial. When the jury has been sworn, the trial shall proceed in the following order, unless the court for special reasons otherwise directs:  *  *  *

"Fifth. When the evidence is concluded and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court. The court shall give general instructions to the jury, which shall be in writing, and be numbered and signed by the judge, if required by either party. Sixth. When either party asks special instructions to be given to the jury, the court shall either give such instructions as requested, or positively refuse to do so; or give the instructions with modification in such manner that it shall distinctly appear what instructions were given in whole or part, and in like manner those refused, so that either party may except to the instructions as asked for, or as modified, or to the modification, or to the refusal. All instructions given by the court must be signed by the judge; and filed together with those asked for by the parties as a part of the record."

We have not found where this court has directly passed upon these provisions of our statute; neither has either party in his brief cited us any holdings of this court directly interpreting these provisions. The provisions state that when the evidence is concluded, if either party desires special instructions, he should reduce them to writing, number them, and either the party or his attorney sign them and deliver them to the court. This must contemplate that if special requested instructions are asked for, they must be placed in the hands of the trial judge before he prepares his general instructions to the jury. He is entitled to have them and whatever assistance and suggestions they may afford him in planning and formulating his general instructions to the jury, and that he may have an opportunity to pass upon them intelligently and determine what ones or portions of the specially requested instructions he is willing and ought to give.

The sixth subdivision of section 5002, supra, contemplates that after the fifth provision has been complied with, the court will then be in a position to do what he is directed to do in the sixth subdivision, and the attorney requesting the instructions will also have an opportunity to properly save his exceptions. It is not fair to the court for the attorney desiring to have his requested instructions considered, to wait until the court is ready to present his general instructions to the jury, before presenting his instructions for the first time to the court for consideration, and at which time in the instant case the trial court is for the first time presented with 13 requested instructions. This is a situation that the attorneys should not confront a trial court with.

After the parties to the suit had rested the following proceedings were had, as shown on pages 160 to 163, inclusive, of case-made:

"Mr. Warner: The defendant rests.

"Mr. Robertson: The plaintiff rest.

"Thereupon the trial of the cause was recessed until 7:30 o'clock p. m. this date, to wit, February 19, 1918, the jury being allowed to separate under the usual admonition of the court.

"Thereafter, to wit, at 7:30 o'clock p. m., February 19, 1918, the trial of the cause was resumed, the jury all being present, and the parties being present by their respective attorneys, and thereupon the following proceedings were had, to wit:

"Mr. Horton: The defendant offers to the court written instructions numbered one to thirteen, inclusive, requested by defendant and requests the court to consider said instructions in determining what instructions shall be given to the jury. The court declines to give or consider any of said instructions for the reason that the same were not presented to the court within the proper time. The court took a recess at the close of all the testimony in the cause by the parties at the hour of 5:30 o'clock p. m. At that time no offer was made to the court to consider instructions prepared by either party. Thereupon, the defendant prepared said instructions one to thirteen, inclusive, and at the hour of reconvening, to wit, 7:30 o'clock p. m., offered to the court said instructions and requests the court to consider the same before giving the instructions in said cause. The court declined to do so upon the grounds that said instructions had not been requested in time that he might consider the same in the preparation of the instructions given by the court on its own motion. The defendant suggests to the court that the time of the recess was taken up completely in the preparation of said instructions requested by defendant, and that the same could not be presented to him at an earlier hour. Said instructions numbered one to thirteen, inclusive, the

defendant asks to have marked as defendant's exhibit 'B', and be made a part of the record in the case, and excepts to the refusal of the court to consider the same.

"The Court: The court will say that this afternoon at five-thirty both parties rested and the witnesses were discharged. The court was not notified that any instructions would be prepared and presented to him for his consideration. The court for quite a period of this time, to wit, two hours, was at his chambers and when seven-thirty arrived then had his instructions filed with the clerk. Court was convened and the jury in the box and was ready then to read his instructions and it was then the first time that the court was notified that special instructions had been prepared and asked by him to be considered. The court will hold that they were not timely presented. To which ruling of the court the defendant duly excepted.

"Mr. Warner: I will simply state that the court did not inquire of counsel if special instructions would be requested by them.

"The Court: That is correct; I went on the presumption that if they had any special instructions, they would speak to the court without the court speaking to them about it. The instructions may be marked as an exhibit.

"Marked defendant's exhibit 'B.'

"Thereupon the court read to the jury his general instructions."

This portion of the record shows that the court, in its holding that the requested instructions were not timely presented, was correct, and the question as to whether the court would then consider the requested instructions, since offered out of time, rested in the discretion of the court. The burden would then be upon the attorneys for the defendant railroad company to show an abuse of this discretion. There is nothing in the record showing that the court abused this discretion in this matter, and the attorneys for the defendant railroad company have pointed out nothing in their brief, either in fact or in law, that would cause this court to hold or warrant it in holding, that the trial court had abused this discretion.

At the close of the evidence, the attorneys for the defendant railroad company should have suggested to the trial court that they intended to prepare and present to him requested instructions and that they desired to have an opportunity to present the same to him, and in which event the attorneys for the defendant railway company would be in a position to urge an abuse of discretion on the part of the trial court with some show of reason and justice, and in the event they had been refused such request. This would have been at a time before the general instructions were prepared. Then if the attorneys for the defendant railroad company, instead of presenting 13 instructions at the time, had, during the intermission of the court, prepared the two or three requested instructions to which they appear to have been entitled, and before the general instructions had been prepared, and had presented them to the trial court, they probably would have gotten them considered. Or even if they had presented to the court the 13 requested instructions during the intermission of the court, and while they had reason to believe that the court was preparing his general instructions, they, no doubt, would have had them duly considered by the court.

To repeat, we will say that no showing has been made to this court in the instant case that will warrant a reversal upon this ground. We, therefore, hold that the court did not commit error in refusing said requested instructions, nor any of them.

It must be borne in mind that we are not holding in this case that it is not the duty of the court to give instructions to the jury substantially covering the question of law applicable to the issues. And this he should do on his own motion and without request of the parties to the suit, and the parties to the suit, in addition to the general instructions, are entitled to have instructions particularly covering their theory of the case, if presented in time and if they have not been covered in substance by the general instructions.

A portion of section 53, page 270, 20 R. C. L., reads as follows:

"Omission or Refusal to Instruct. The failure of the trial court to submit to the jury such issues as are necessary to settle the material controversies, or to state the law applicable to a material issue, such as damages, is ground for a new trial."

Section 54, page 271, 20 R. C. L., reads as follows:

"Objections and Exceptions. An instruction fundamentally wrong, or which has the effect of preventing a verdict for a substantial amount on a cause of action well pleaded and proven, may be

assigned as error on a motion for a new trial, even though at the trial the attorney states that he has no exception to the charge, but it is otherwise with inaccuracies of expression, failure to instruct on every hypothesis, or inadequate treatment of some phase of the controversy. Under the statutes of some states instructions not excepted to, but which appear from the record to have been given or refused, are open for consideration on motion for a new trial."

We have set out in this opinion the six grounds assigned for argument. Nos. 1, 2, 3, and 4 of said assignments assigned as error the refusal of the court to give requested instructions numbered 3, 5, 11, and 13. Error assigned for argument No. 5 assigned error on the part of the trial court in refusing to consider and give any of the requested instructions asked by the defendant railway company, and since we have held herein adversely to the contentions of the defendant railway company in the fifth assignment, holding that the court held correctly that the requested instructions were not presented in time and that there was no abuse of discretion of the trial court in refusing to consider any of the requested instructions, by such a holding on the fifth assignment of error argued we disposed of the 1st, 2nd, 3rd, and 4th assignments.

The sixth assignment of the defendant railway company in its brief is as follows:

"The trial court erred in refusing to grant the defendant a new trial and in rendering judgment against the defendant."

Under said assignment, the comment of the brief is as follows:

"For the reasons hereinabove set out in this brief, it is urged that the trial court should have granted the defendant a new trial in this case and should not have rendered judgment in favor of the plaintiff and against the defendant on the verdict of the jury. As the errors more particularly relied on have been fully argued under other subheads of this brief, it is not deemed necessary to again present them under this subhead, but reference is made thereto in support of the alleged error of the court in rendering judgment against the defendant and in refusing to grant it a new trial."

The defendant railway company not having called this court's attention to any specific errors in its brief, and which errors may have been raised by the motion for a new trial, other than those already considered, the same will be held to have been waived by the defendant

railway company, and that there was nothing further for this court to consider.

We find no error in this record as presented to this court, and the judgment of the trial court is, therefore, affirmed.

PITCHFORD, V. C. J., and KANE, JOHNSON, and NICHOLSON, JJ., concur.