**NEW et al., Receivers, v. BRADSHAW.**

No. 11726—Opinion Filed June 27, 1922.

Rehearing Denied April 24, 1923.

(Syllabus.)

1. **Negligence—Burden of Proof—Presumption from Injury.**

The mere fact that an injury occurs carries with it no presumption of negligence; that the injury or accident was the result of negligence of the defendant is an affirmative fact for the plaintiff to establish by the evidence.

2. **Same—Instruction on Elements of Negligence—Necessity.**

Where the defendant requested an instruction correctly stating the elements of negligence necessary to be found by the jury in order to establish liability on the part of the defendant, and such elements of negligence are not included in the instructions given by the court, it is error for the court to refuse to give to the jury such requested instruction.

3. **Trial—Instructions—Submission of Issues—Necessity.**

It is the duty of the court to submit to the jury, by proper instructions any issue, theory or defense which the evidence tends to support, and failure so to do, at the request of the defendant, constitutes prejudicial error.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Peter Bradshaw against Alexander New and H. C. Ferris, receivers of Missouri, Oklahoma & Gulf Railroad Company for damages for personal injuries. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

John E. M. Taylor, for plaintiffs in error.

W. N. Maben, for defendant in error.

NICHOLSON, J. This was an action to recover damages for personal injury sustained by the defendant in error while in the employ of plaintiff in error. The parties will be referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

The plaintiff alleged that on the 16th day of March, 1917, at about the hour of 8:45 p. m., he was employed by the defendants as conductor on one of their trains, known as the Night Mine Run, a train running between Henryetta and Dewar; that he attempted to get on the engine of said train for the purpose of informing the engineer to stop at No. 5 mine, for the purpose of picking up the brakeman; that when he attempted to catch the engine on the right side, or the engineer's side and attempted to get hold of the hand-holds of the cab and tank of the engine, to get up in the gangway, the storm curtain which fastens between the cab and the tank was rolled back and had entirely covered up the handhold of the cab; that plaintiff did not know that said curtain had covered up said handhold and had no means or opportunity of discovering the same until after he had attempted to take hold of the same, and at the time the accident occured; that after plaintiff attempted to take hold of said cab handhold, and was unable to do so, his right foot failed to reach the step of the engine and went under the trucks or wheels of the tank tender, cutting off the toes of said foot and so mangling the foot that it became necessary to amputate the same at a point above the instep; that the defendants negligently and carelessly allowed said storm curtain to be and remain around said handhold so as to prevent the plaintiff, as well as other employes, from taking hold of said handhold, and negligently and carelessly failed to furnish him with a reasonably safe place in which to work or reasonably safe tools and appliances with which to do his work; and he further says that the time of the accident he was in the discharge of his duty; was at a place where his duty required him to be, and that on account of the negligence and carelessness of the defendants he sustained the injury complained of, and that such negligence was the proximate cause of said injury.

The defense interposed was, first, a general denial; second, contributory negligence; and third, assumption of the risk.

The plaintiff testified that at the time alleged he was employed by the defendants as conductor and had charge of the night coal run; that he was instructed by the yardmaster to go and pull the mines and spot them; that is, to remove the loaded cars from and place empty cars at the mines; that just prior to the time he was injuried he had pulled one mine and went back to pull the Blackstone mine; that he left the brakeman at No. 5 coal mine to see that the tracks were clear; that at the time he was hurt he had started from Blackstone to No. 5 mine; that he was on the ground and was going to catch the engine as it passed him; that the engine was coming toward him at a rate of speed of five or six miles an hour; that there are handholds on the engine, placed one on the cab and one on the tank of the engine on either side; that as the engine came by him he reached up with his right hand to catch the handhold on the cab and missed it because the storm curtain was wrapped in and around it, and as he missed the handhold on the cab he fell and caught the handhold on the tank of the engine and his right foot went under the engine and was caught and crushed, necessitating amputation of a part of the foot.

R. Stroyer, the engineer in charge of the engine at the time of the accident, testified that the storm curtain was not wrapped around the handhold, and that the handhold was not covered up or obstructed in any way; that there was nothing to prevent its use at the time of the accident. He further testified that he asked the plaintiff how the accident occurred, and that the plaintiff replied that, when he went to get on, his foot slipped, and that the plaintiff at that time did not say that the storm curtain was wrapped around the handhold.

Grover W. Wilson, one of the brakemen working with the plaintiff at the time of the accident, testified that he helped place the plaintiff on the engine immediately after the accident; that the handhold was not covered up at that time, but that the curtain was strapped back in its proper place.

· The plaintiff admitted that in his report of the accident in describing the cause of the injury, and in answer to the following question: "If there was any defect in anything belonging to the company that caused the injury, how long had same existed and had same been reported, and if so, when, by whom, and to whom?" He stated: "Something caught feet."

At the close of plaintiff's evidence, the defendants demurred thereto, which demurrer was by the court overruled. A verdict was returned in favor of plaintiff for the sum of $10,000. upon which judgment was rendered, to review which this proceeding in error is prosecuted.

The only assignments of error necessary to consider are those which question the correctness of certain instructions to the jury, and which complain of the court's refusal to give certain instructions requested by the defendants. The court, in its general instructions, gave instruction No. 6, which is as follows:

"You are further instructed, gentlemen of the jury, that if you should find from the testimony that some time on or about the 16th of March, 1817, and on or about 8:45 p. m., plaintiff was employed by defendants as conductor on one of defendants trains known as the Night Mine, and that while operating said train and switching cars on the various trains near Dewar and that while switching such cars it was his duty to get upon the engine for the purpose of communicating with the engineer, and if you further find by a preponderance of the evidence that plaintiff, while exercising due care and caution for his own personal safety, attempted to get on said engine, and you further find that the handholds of said engine were covered up and not in such a condition that plaintiff could get hold of them, and if you further find that plaintiff could not see and did not discover the fact that said handholds were covered up, and if you find that plaintiff was free from negligence, and if you further find, that on account of said handholds being covered up plaintiff was prevented from catching hold of them and on account thereof was precipitated to the ground and his foot was run over by the wheel of said engine and cut off, then if you so find, your verdict should be for the plaintiff."

It will be observed that this instruction purports to cover the whole case, except as to the measure of damages, and the jury no doubt were guided by it in arriving at their verdict. This instruction does not require the jury to find that the defendants were negligent, but the jury was told in substance that if it found that the handhold was covered up, and on account thereof the plaintiff was prevented from catching hold of it, and the plaintiff was free from negligence, their verdict should be for the plaintiff. This instruction entirely omits the question of negligence of the

defendants, and from it the jury might conclude that negligence might be referred from the mere fact of accident and injury, its effect was to make the defendants insurers of plaintiff's safety. This was wrong; the mere fact that an injury occurred carries with it no presumption of negligence on the part of the defendants; that the injury or accident was the result of negligence of the defendants was an affirmative fact for the plaintiff to establish by the evidence. C., R. I. & P. Ry. Co. v. Watson, 36 Okla. 1, 127 Pac. 693; C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; St. Louis & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126; Elliott on Railroads, vol. 4, sec. 1697.

While the court in instruction No. 1 told the jury that the burden was upon the plaintiff to establish by a preponderance of the evidence each and every material allegation in his petition, nowhere, except in the instruction above set out, did the court attempt to state what the material allegations were which must be proved, and by omitting to instruct on the question of defendants' negligence the jury might have inferred that it was not incumbent upon the plaintiff to prove negligence on the part of the defendants, but that, if they believe from the evidence that the handhold was covered up, the defendants would be liable, regardless of how the curtain happened to be over the handhold at the instant of the accident; whether, because of the fault of the defendants, or of some third party, or otherwise, whether or not such fact was known to the defendants or their agents, or servants, or had existed for such a length of time that defendants, in the exercise of ordinary care, would be presumed to have knowledge of such condition.

The defendants requested certain instructions, which were by the court refused, No. 4 of which reads as follows:

"You are instructed that the only act of negligence charged in the petition in this case in that the defendants were negligent in permitting the storm curtain used upon the engine to be rolled back and cover the handholds of the cab. The burden of proof is upon the plaintiff to establish such negligence, and before he would be entitled to recover in this case, it would be incumbent upon him to show by a preponderance of the evidence; First, that the curtain was rolled back so as to cover said handhold; second, that the position of said curtain was due to the negligence of the defendants, their agents, servants, or employes; third, that the position of said curtain was known to the defendants, their agents, servants, or employes at the time of plaintiff's injury, or could have been known at the time by the exercise of ordinary care on their part; fourth, that the position of the said curtain was not known to plaintiff at said time, and could not have been known to him by the exercise of ordinary care and vigilance. If the evidence, by a preponderance thereof, fails to establish any one of the conditions above enumerated, your verdict should be for the defendants."

In our opinion, this instruction correctly stated the elements of negligence necessary to be found by the jury, in order to establish liability on the part of the defendants; and as the court did not include the questions there submitted in his instructions, it was error to refuse such requested instructions.

It is the duty of the court to submit to the jury, by proper instructions, any issue, theory, or defense which the evidence tends to support, and failure to do so, at the request of the defendants, constitutes prejudicial error. Menten v. Richards et al., 54 Okla. 418, 153 Pac. 1177; Holmboe v. Neale, 69 Oklahoma, 171 Pac. 334; Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Spurrier Lumber Co. v. Dodson, 30 Okla. 412, 120 Pac. 934; Mountcastle v. Miller, 66 Okla. 40, 166 Pac. 1057; A., T. & S. F. Ry. Co. v. Jamison, 46 Okla. 609, 147 Pac. 195.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial

HARRISON, C. J., and JOHNSON, McNEILL, ELTING, and KENNAMER, JJ., concur.